## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____

|  | ) |
|---|---|
| **MARTIN MCCAULEY,** | ) |
|  | ) |
| **Plaintiff,** | ) |
|  | ) |
| **v.** | ) |
|  | ) |
|  | ) |
| **THOMAS GROBLEWSKI, REBECCA** | ) |
| **LUBELCZYK, MAUREEN ATKINS,** | ) |
| **MASSACHUSETTS PARTNERSHIP** | ) |
| **CORRECTIONAL HEALTH, GOVERNOR** | ) |
| **CHARLES BAKER, DANIEL BENNETT,** | ) |
| **SEAN MEDEIROS, CYNTHIA SUMNER,** | ) |
| **LYNN LIZOTTE, THOMAS TURCO, III,** | ) |
| **STEPHANIE BYRON, MARIA ANGELES,** | ) |
|  | ) |
| **Defendants.** | ) |

**Civil Action No.: 14-cv-12732**

_____

### MEMORANDUM AND ORDER

**CASPER, J.**                                                                **August 29, 2018**

### I.    Introduction

Plaintiff Martin McCauley ("McCauley") has filed this lawsuit *pro se*, alleging violations

of his Eighth Amendment rights pursuant to 42 U.S.C. § 1983, his rights under the Americans with

Disabilities Act ("ADA") and the Rehabilitation Act and a medical malpractice claim.  D. 36.  Over

the course of this litigation, the Court has dismissed certain claims and defendants, D. 37; D. 83,

and referred McCauley's medical malpractice claim to a medical malpractice tribunal in

accordance with Mass. Gen. L. c. 231, § 60B. D. 102.  McCauley's surviving claims include  ADA

and Rehabilitation Act claims against Defendants Turco and Medeiros (the "Commonwealth

Defendants"), as well as ADA, Rehabilitation Act and § 1983 claims against Defendants Angeles,

Atkins, Byron, Groblewski, Lubelczyk and Massachusetts Partnership Correctional Health (the

"Medical Defendants") (collectively, the "Defendants"). Pending before the Court are Defendants' motions for summary judgment, D. 127; D. 132, as well as Defendants' motion to strike, D. 144, Defendants' motion to dismiss for failure to comply with a court order, D. 153, and Defendants' motion to continue the trial date, D. 153. Also pending are McCauley's motion for extension of time to file an opposition, D. 145, a motion to compel discovery, D. 146, and McCauley's opposition and cross-motion for summary judgment, D. 155. For the reasons set forth below, the Court ALLOWS Defendants' motions for summary judgment, DENIES McCauley's cross-motion for summary judgment and DENIES as moot the remaining motions that are pending.[1]

## II.    Standard of Review

The Court grants summary judgment where there is no genuine dispute as to any material fact and the undisputed facts demonstrate that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A fact is material if it carries with it the potential to affect the outcome of the suit under the applicable law." Santiago–Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000) (quoting Sánchez v. Alvarado, 101 F.3d 223, 227 (1st Cir. 1996)) (internal quotation marks omitted). The movant "bears the burden of demonstrating the absence of a genuine issue of material fact." Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir. 2000); see Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the movant meets his burden, the non-moving party "may not rest upon mere allegation or denials of his pleading," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986), but "must, with respect to each issue on which [he] would bear the burden of proof at trial, demonstrate that a trier of fact could reasonably resolve that issue

---

[1] Defendants have also filed several motions in limine, Ds. 157-59; Ds. 161-64, which are also moot.

in [his] favor," Borges ex rel. S.M.B.W. v. Serrano-Isern, 605 F.3d 1, 5 (1st Cir. 2010). "As a general rule, that requires the production of evidence that is 'significant[ly] probative.'" Id. (quoting Anderson, 477 U.S. at 249) (alteration in original). The Court "view[s] the record in the light most favorable to the nonmovant, drawing reasonable inferences in his favor." Noonan v. Staples, Inc., 556 F.3d 20, 25 (1st Cir. 2009).

## III.    Procedural History

McCauley instituted this action on June 25, 2014. D. 1. McCauley filed an amended complaint on August 9, 2016. D. 36. Subsequently, the Court dismissed claims against UMass Correctional Health System pursuant to 28 U.S.C. § 1915A(b)(2). D. 37. On March 17, 2017, the remaining Defendants moved to dismiss. D. 71; D. 73; D. 75. The Court dismissed all claims against Governor Charles Baker for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), and dismissed all claims against Cynthia Sumner and Lynn Lizotte as a result of McCauley's failure to serve these Defendants properly under Fed. R. Civ. P. 12(b)(5). D. 83. The Court also dismissed the § 1983 claim against the Commonwealth Defendants. Id. The § 1983, ADA and Rehabilitation claims against the Medical Defendants, however, survived, along with the ADA and Rehabilitation claims against the Commonwealth Defendants. Id. The remaining Defendants now move for summary judgment on the claims against them. D. 127; D. 132.

McCauley failed to file a timely opposition to Defendants' motions for summary judgment. D. 115. On July 23, 2018, two days before the hearing on Defendants' motions for summary judgment, D. 127; D. 132, and McCauley's pending motion for discovery, D. 124, McCauley filed a motion requesting additional time to file an opposition to the summary judgment motions, D. 137. The Court denied McCauley's request, D. 139, in light of the age of this litigation, the fact

that McCauley has already received extensions on multiple occasions,[2] the pending motions for summary judgment and the fact that McCauley has been on notice of the summary judgment hearing date since at least April 2018, D. 115 (setting motion hearing for July 25, 2018).

On July 25, 2018, the Court heard the parties on the pending motions for summary judgment. During oral argument, McCauley provided the Court with a statement he had prepared for the hearing, D. 142, and which the Court agreed to consider along with the motions for summary judgment. D. 141. The Court also heard the parties on McCauley's pending motion for discovery, D. 124, which the Court denied. D. 141. In addition, the Court granted McCauley's request for leave to file an opposition to Defendants' motions after the hearing. Id. Per the Court's instruction, McCauley was to file an opposition by no later than August 8, 2018, and no further extensions were expected. Id.

On August 8, 2018, McCauley filed a copy of the Medical Defendants' statement of material facts that includes handwritten notes purportedly responding to the facts proffered by the Medical Defendants. D. 143. On August 15, 2018, the Medical Defendants filed a motion to strike McCauley's response to its statement of material facts for failure to comply with Fed. R. Civ. P. 56 and Local Rule 56.1. D. 144. McCauley filed a motion for extension of time to August 16, 2018 to file an opposition to Defendants' motions for summary judgment, D. 145, a renewed motion for discovery, D. 146, and McCauley's third motion for appointment of counsel, D. 148. Defendants have opposed these motions, D. 149; 150; 151, and filed joint motions to continue the trial date, D. 154, or, in the alternative, to dismiss in light of McCauley's failure to comply with the Court's deadline to file an opposition to summary judgment, D. 153.

---

[2] See D. 6; D. 9; D. 17; D. 19; D. 21; D. 32; D. 34; D. 46; D. 115.

McCauley's opposition to Defendants' motions for summary judgment, cross-motion for summary judgment and a statement of material facts were filed on August 22, 2018.[3] D. 155; D. 156. McCauley also filed supporting exhibits on August 23, 2018. D. 160. In light of McCauley's *pro se* status, the Court has considered these filings to the extent relevant, despite the delay and McCauley's failure to adhere to various federal and local rules of civil procedure, including Local Rule 7.1(b)(4) (explaining that memoranda supporting or opposing allowance of motions shall not, without leave of court, exceed twenty pages).

## IV. Factual Background

The following facts are drawn primarily from the parties' statements of material facts, D. 129; D. 134; D. 156, and supporting materials. The facts are undisputed unless otherwise noted. McCauley is an inmate currently incarcerated at Massachusetts Correctional Institution-Norfolk ("MCI-Norfolk"), which is part of the Massachusetts Department of Correction ("DOC"). D. 134 ¶ 1. With the exception of thirteen months during which McCauley resided at MCI-Shirley between 2014 and 2015, McCauley has primarily served his sentence at MCI-Norfolk. D. 134 ¶ 2.

### A. McCauley's Medical Care

McCauley suffers from several health issues, including issues with his back, shoulder, thumb and discomfort caused by his dentures. D. 156 ¶¶ 5, 69. Since July 1, 2013, Defendant Massachusetts Partnership for Correctional Healthcare, LLC ("MPCH"), a privately-owned company under contract with DOC, has overseen McCauley's medical treatment. D. 134 ¶ 6.

---

[3] As the Commonwealth Defendants note, McCauley's statement of material facts does not dispute the facts proffered in their statement and, instead, focuses entirely on the Medical Defendants statement of material facts. D. 166.

Prior to July 1, 2013, UMass Correctional Healthcare provided medical services at DOC facilities. D. 134 ¶ 4.

### 1. Medical Treatment for Back Issues

McCauley has severe scoliosis, degenerative joint disease of the spine, spinal stenosis, Hepatitis C and chronic back pain. D. 129 ¶ 4; D. 134 ¶ 3. McCauley's back problems were first documented by UMass Correctional Healthcare in 1983. D. 156 ¶ 8; D. 160-2 at 1. In 2003, a MRI of McCauley's back revealed "[s]evere degenerative disc disease at the L4-5 level with vacuum disc phenomena being identified, without evidence of a focally herniated or lateralizing disc." D. 156 ¶ 8; D. 160-6 at 2. In a follow-up letter, a physician explained that although McCauley's MRI showed significant degenerative disease nothing "seems to suggest that surgical treatment" was necessary at the time. D. 160-2 at 6. The letter further states that "consideration could be given to epidural steroid injections, but . . . continued supportive treatment would be the best for [McCauley]." Id. Between 2003 and 2012, McCauley received multiple MRIs of his back, epidural steroid injections to reduce his pain, physical therapy, as well as several consultations with orthopedic physicians, arthritis specialists, neurologists and neurosurgeons. See generally, D. 160-6. In 2006 and 2008, McCauley was referred to a neurosurgeon, who suggested nonsurgical management for McCauley's pain, id. at 14, 17, which McCauley received, id. at 18. At the neurosurgeon's recommendation, McCauley was eventually referred to a spine neurosurgery specialist, Dr. Ron Riesenburger, id. at 20, 25, who similarly indicated that surgery was not recommended and referred McCauley to physical therapy, id. at 27-28; see D. 134 ¶ 39; D. 135-1 at 3. [4]

---

[4] McCauley asserts that a neurosurgeon examined his back and recommended immediate surgery on January 4, 2011. D. 156 ¶ 6. However, McCauley's own proffered evidence does not support this assertion, including the nearly 500 pages of exhibits McCauley filed in support of his statement

On July 30, 2012, Dr. Riesenburger discussed the benefits of back surgery with McCauley, and McCauley asked for more time to think about it. D. 160-6 at 36. On November 16, 2012, McCauley requested that any surgery on his back be delayed until he could secure a "single cell." D. 134 ¶ 42; D. 135-1 at 16. Shortly thereafter, Defendant Lubelczyk took over McCauley's care at MCI-Norfolk and referred him to another neurosurgeon. On March 28, 2013, Lubelczyk told McCauley that his new neurosurgeon, Dr. Massengale, had recommended back surgery. D. 134 ¶ 45; D. 135-1 at 22. That day, McCauley told Lubelczyk that he wanted to defer the procedure, and he reiterated this request on April 12, 2013.[5] D. 134 ¶¶ 45, 47; D. 135-1 at 22, 23. On April 19, 2013, McCauley informed Lubelczyk that he was ready for surgery. D. 134 ¶ 48; D. 135-1 at 24. The surgery, which involved "an extensive fusion with rods," was completed on July 20, 2013. D. 134 ¶ 51.

After surgery, McCauley was sent to the Souza Baranowski Correctional Center infirmary for recovery and physical therapy. D. 134 ¶ 52. McCauley returned to MCI-Norfolk on September 27, 2013. D. 134 ¶ 54. Between October 2013 and January 2014, McCauley met with Lubelczyk regarding his back on at least nine occasions. See generally, D. 134 ¶¶ 55-73; 135-1. In addition to examining McCauley's back, Lubelczyk also requested and followed-up on requests for MRIs on McCauley's behalf, D. 134 ¶¶ 61, 66, 68, 71; D. 135-1 at 36, 39, 41; requested the implementation of medical restrictions, a handicapped shower and a walker in light of McCauley's

---

of material facts and opposition to Defendants' motions for summary judgment. See D. 160. To the contrary, McCauley's exhibits indicate that on January 4, 2011, Dr. Riesenburger determined that surgery was not necessary and, instead, referred McCauley to physical therapy. D. 160-6 at 27-28. McCauley has therefore failed to properly dispute Defendants' facts on this point. See MacLeod v. Kern, 379 F. Supp. 2d 103, 109 (D. Mass. 2005) (explaining that "[s]peculation and conclusory allegations, unaccompanied by evidentiary support, do not suffice to avoid summary judgment").

[5] On at least one occasion, Lubelczyk warned McCauley of the risks associated with delaying his surgery. D. 134 ¶ 45.

pain and surgery, D. 134 ¶¶ 72-73; 135-1 at 41; and admitted McCauley into the Assisted Daily Living ("ADL") unit, which is the health services unit at MCI-Norfolk. D. 134 ¶ 69; D. 135-1 at 39. Lubelczyk treated McCauley for the last time on January 2, 2014. D. 134 ¶ 73.

In January 2014, McCauley underwent a second surgery on his back. D. 134 ¶ 75; D. 135-1 at 47. After his surgery, McCauley was sent to the Lemuel Shattuck Hospital until May 14, 2014 and then to MCI-Shirley for rehabilitation and physical therapy until May 2015. D. 134 ¶ 76. Defendant Angeles also ordered additional scans of McCauley's back at least as late as April 2015. D. 36-3 at 16-19. In January 2017, Dr. Massengale recommended McCauley for a posterior cervical laminectomy to help decompress his spinal cord. D. 134 ¶ 77; D. 135-1 at 92-95. The surgery occurred in February 2017. D. 134 ¶ 77.

### 2. Discontinuation of Pain Medication

In late October 2013, McCauley informed Lubelczyk of his continued back pain from surgery and Lubelczyk observed that McCauley had trouble standing up without the assistance of his hands. D. 134 ¶ 55; D. 135-1 at 30. Subsequently, on October 21, 2013, Lubelczyk discontinued McCauley's prescription for pain medications Percocet and Neurontin because McCauley had tested positive for an illicit substance that he was not prescribed. D. 134 ¶ 57; D. 135-1 at 31. To alleviate McCauley's pain, Lubelczyk issued McCauley prescriptions for other pain medications. D. 135-1 at 31. McCauley did not agree with Lubelczyk's decision to discontinue his Neurontin prescription. D. 156 ¶ 21; D. 160-2 at 32 (indicating that, on November 25, 2013, Prisoners' Legal Services sent a letter to the Medical Director of MCI-Norfolk on McCauley's behalf explaining that he was experiencing severe pain after his prescriptions for pain medications were discontinued). As a result, he filed a grievance requesting the reinstatement of his Neurontin prescription. D. 134 ¶ 114; D. 133-3 at 19. On December 3, 2013, Defendant Atkins

denied McCauley's grievance because "it was submitted greater than 10 days after the incident date," and requested that McCauley submit a "sick slip or attend access hour with any further questions or concerns." D. 134 ¶ 114; D. 133-3 at 18. McCauley's appeal, D. 133-3 at 21, was also denied after discussion with his medical team, id. at 20.

### 3.    Allergic Reaction to Medication

On November 11, 2014, McCauley submitted a sick call request form in which he explained that he was hospitalized from an allergic reaction to Zanaflex, a medicine that Defendant Angeles had recently prescribed McCauley despite the fact that it should not be taken with one of McCauley's other medications. D. 134 ¶ 118; D. 135-1 at 54-55; D. 133-3 at 39. McCauley's grievance regarding the incident was denied as "non-grievable medical" and Zanaflex was added to his allergy chart. D. 134 ¶ 118; D. 133-3 at 39. McCauley did not appeal the decision. D. 134 ¶ 119.

### 4.    Medical Treatment for Shoulder, Thumb, and Denture Issues[6]

McCauley has experienced issues with his shoulder, thumb and teeth. D. 134 ¶¶ 94-112. With respect to his shoulder, McCauley first received a cortisone shot to his right shoulder in November 17, 2011. D. 134 ¶ 96; D. 135-1 at 2. McCauley received an MRI on his shoulder on April 2, 2012, which showed an "AP tear of labrum and some muscle tear." D. 134 ¶ 97; D. 135-1 at 11. On May 24, 2012, McCauley informed Defendant Atkins that he wanted to try physical therapy as opposed to surgery to alleviate his shoulder pain. D. 134 ¶ 98; D. 135-1 at 11. McCauley similarly rejected recommendations for surgery on June 4, 2012 and July 31, 2012,

---

[6] McCauley also alleges that Defendant Lubelczyk denied his requests for a colonoscopy. D. 36 ¶ 48. The undisputed material facts indicate that the colonoscopy was eventually approved, D. 134 ¶ 92; 135-1 at 86, and McCauley does not allege any injury from the initial denial of his request. See D. 156 ¶¶ 107-12. Accordingly, the Court dismisses McCauley's claims with respect to the denial of his request for this procedure without further comment.

stating that he wanted to wait until he had a single cell.[7]  D. 134 ¶¶ 99-100; D. 135-1 at 12, 14.  To date, McCauley has not filed any grievance alleging inadequate treatment as to his shoulder.  D. 134 ¶ 94.

On March 10, 2011, McCauley received an x-ray for his thumb, which showed mild degenerative changes.  D. 134 ¶ 102; D. 135-1 at 15.  In April 2011, McCauley received a cortisone shot for his thumb pain.  D. 134 ¶ 103; D. 135-1 at 5.  In January and August 2012, he complained about his thumb, but did not file a formal grievance alleging inadequate treatment as to this condition.  D. 134 ¶¶ 101, 103, 104; D. 133-3.

McCauley also struggles with pain due to the ill-fitting dentures.  D. 156 ¶ 69.  McCauley first received dentures in June 2015.  D. 134 ¶ 107; D. 135-1 at 67-68.  He received new dentures and/or had his dentures adjusted at least four times between June 2015 and February 2016.  D. 134 ¶¶ 108-9, 111-12; D. 135-1 at 81, 89, 91.  McCauley has filed two grievances regarding his dentures.  D. 134 ¶¶ 121-22; D. 133-3 at 52-65.  Both grievances were denied by Defendant Byron on the grounds that McCauley's dentures were already realigned for the best possible fit.  Id.  McCauley's appeals of these decisions were also denied at the recommendation of the DOC's dental team.  Id.

### B.      Denial of McCauley's Request for Reasonable Accommodation

By November 13, 2013, Defendant Lubelczyk observed that McCauley, who was wearing a plastic corset from his surgery and reported "sharp" abdominal pain, appeared to be "in less distress and less pain" than Lubelczyk had previously observed.  D. 134 ¶ 64; D. 135-1 at 56.  Less

---

[7] McCauley opines that he was never encouraged to have surgery on his shoulder, D. 156 ¶ 60, however, his unsupported assertions are refuted by the record before the Court.  See D. 135-1 at 12, 14 (explaining that during two meetings with a member of MPCH's medical team, McCauley indicated that he wanted to defer surgery on his shoulder).

than two weeks later, McCauley filed a request for reasonable accommodation of special needs with the DOC.  D. 129 ¶ 16; D. 129-1 at 34.  Specifically, McCauley requested a stand-up locker in his cell to replace the standard foot locker issued to individuals incarcerated in DOC facilities.  Id.  In support of this request, McCauley explained that he could not bend over to access a foot locker, which he described as located "under the bunk."  D. 129-1 at 34.  Cynthia Sumner, the Deputy Superintendent of MCI-Norfolk at the time, determined, in consultation with medical staff, that McCauley's stand-up locker was "no longer medically necessary."  D. 129 ¶¶ 17-23; D. 129-1 at 34.  Specifically, Sumner explained that "because of [McCauley's] back surgery completed in July, a stand-up locker is no longer considered to be medically necessary."  D. 129-1 at 36.  In accordance with DOC policy, McCauley's request was denied after review by and in consultation with Defendant Atkins in her capacity as Health Services Director of MCI-Norfolk.  D. 129 ¶ 20; D. 129-1 at 34.  McCauley admits that he likely did not appeal the denial of his request for a stand-up locker.  D. 129-1 at 17 (explaining, in response to a question regarding whether McCauley appealed the denial of his request for a stand-up locker, "I don't think I did because, like I said, [Sumner] came and apologized").  Defendants, by reference to McCauley's deposition testimony, dispute McCauley's assertion that he even had a medical order for a stand-up locker at the time he filed his request.  D. 129-1 at 8 (stating, in response to a question regarding whether he had a stand-up locker when Sumner denied his request, that "[m]y recollection is I didn't have it").  Defendants acknowledge, however, that McCauley has had a stand-up locker since at least 2015.  D. 129 ¶ 44; D. 129-1 at 47.

## V.      Discussion

### A.      Plaintiff Failed to Exhaust His Administrative Remedies

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other

federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); see Woodford v. Ngo, 548 U.S. 81, 87 (2006). Exhaustion of administrative remedies "is no longer left to the discretion of the district court, but is mandatory." Woodford, 548 U.S. at 85; see Jones v. Bock, 549 U.S. 199, 211 (2007) (noting that "[t]here is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court"). Thus "a court may not excuse a failure to exhaust, even to take [special] circumstances into account." Ross v. Blake, __ U.S. __, 136 S. Ct. 1850, 1856 (2016). Defendants have the burden of raising and proving that exhaustion was not satisfied. Cruz Berrios v. Gonzalez-Rosario, 630 F.3d 7, 11 (1st Cir. 2010) (citing Jones, 549 U.S. at 216). Here, Defendants argue that McCauley failed to exhaust the appeals process for clinical grievances at least with respect to his back, shoulder and thumb and, as a result, the PLRA forecloses his claims for relief with respect to those ailments. D. 133 at 3-6.

Pursuant to the MPCH's Clinical Grievance Mechanism, an incarcerated person must complete the following steps before administrative remedies will be deemed exhausted: (1) bring an informal grievance to the attention of the relevant Health Services Administrator ("HSA"); (2) file a formal grievance using the Inmate Grievance and Appeal Form within ten working days of the incident, becoming aware of the incident or the date upon which the HSA responds to the informal grievance, if the HSA did not provide a satisfactory response to the informal grievance; and (3) appeal a decision on the formal grievance to the MPCH Grievance and Appeal Coordinator within ten working days from receipt of the decision by the HSA. D. 133-3. An incarcerated person's administrative remedies are deemed exhausted only after the Grievance and Appeal Coordinator issues a response to the appeal. Id. Although McCauley is familiar with the grievance process, see D. 160-10, the record contains no evidence of any formal written grievance or appeal

concerning the medical care McCauley received in connection with his back, thumb and shoulder. D. 134 ¶¶ 113-23.

Courts have held that failure to complete the formal grievance and appeal processes outlined in the MPCH policy at issue here is fatal to claims under § 1983 and other federal laws at the summary judgment stage. See, e.g., Nassar v. Ruze, No. CV 16-10798-ADB, 2018 WL 1411201, at *6 (D. Mass. Mar. 21, 2018); Rodriguez v. Garcia, No. CIV. 09-1094 JAF/JP, 2011 WL 6057746, at *3 (D.P.R. Dec. 6, 2011). As an initial matter, McCauley argues that he exhausted his administrative remedies with respect to the allegedly inadequate care he received for his back injuries and pain. D. 155 at 10-11. However, the only grievance documents that refer to McCauley's back do not appear to have been filed with HSA, as required by MPCH's Clinical Grievance Mechanism. See D. 160-10 at 2-4 (containing grievance forms that do not include a signature, date received or any other acknowledgment of receipt by HSA representatives); see D. 165 at 3 (acknowledging the same). McCauley also contends that his failure to exhaust available administrative remedies should not result in dismissal of his claims because the Medical Defendants disregarded his grievances. D. 155 at 9. The cases McCauley cites for support are inapposite given that the administrative remedies in those disputes were deemed unavailable to the plaintiffs. See Timberlake v. Buss, No. 1:06CV1859RLY-WTL, 2007 WL 1280659, at *3 (S.D. Ind. May 1, 2007) (explaining that the administrative remedies were unavailable where there was no evidence the plaintiff was "aware, or even that he should have been aware, of the execution protocols" at issue); Lampkins v. Roberts, No. 1:06CV639DFH-TAB, 2007 WL 924746, at *3 (S.D. Ind. Mar. 27, 2007) (holding that the affirmative defense of administrative exhaustion was not satisfied where the grievance procedure failed to inform plaintiff of the five-day deadline to file a grievance); Brookins v. Vogel, No. 1:05-CV-0413-OWWDLBP, 2006 WL 3437482, at *3

(E.D. Cal. Nov. 28, 2006), <u>report and recommendation adopted</u>, No. 105CV00413OWWDLBP, 2007 WL 433155 (E.D. Cal. Feb. 8, 2007) (denying motion to dismiss where prison staff allegedly denied a grievance as untimely due to where staff either lost or failed to process the grievance). Here, in contrast, the undisputed material facts indicate that McCauley was familiar with the grievance and appeal process given, for example, his exhaustion of administrative remedies with respect to his dentures, D. 134 ¶¶ 121-22; D. 133-3, and that he failed to take the necessary steps to exhaust the available remedies for his back, thumb and shoulder, D. 134 ¶¶ 113-23; D. 133-3.

Even assuming McCauley could cure his failure to exhaust the aforementioned administrative remedies, his claims still fail on the merits. Moreover, to the extent McCauley properly exhausted administrative remedies with respect to the discomfort caused by his dentures, judgment as a matter of law is nevertheless warranted for the reasons discussed below as to the merits of these claims.

**B.      Eighth Amendment Claim Pursuant to § 1983**

McCauley's remaining Eighth Amendment claims under § 1983 include claims seeking injunctive relief against the Medical Defendants in their official capacities and damages against Defendants Angeles, Atkins, Byron, Groblewski and Lubelczyk in their individual capacities. D. 83. McCauley alleges that the medical care he received from the Medical Defendants was "so inadequate as to shock the conscience" in violation of the Eighth Amendment's prohibition against cruel and unusual punishment. <u>Perry v. Roy</u>, 782 F.3d 73, 78 (1st Cir. 2015) (quoting <u>Torraco v. Maloney</u>, 923 F.2d 231, 235 (1st Cir. 1991)) (internal quotation marks omitted); <u>see</u> <u>Feeney v. Corr. Med. Servs., Inc.</u>, 464 F.3d 158, 161 (1st Cir. 2006). Prevailing on a claim of deliberate indifference based on inadequate or delayed medical care requires a plaintiff to satisfy both an objective and subjective inquiry. <u>See, e.g.</u>, <u>Perry</u>, 782 F.3d at 78. The objective prong requires the plaintiff to establish that his medical need is or was "sufficiently serious," <u>Burrell v. Hampshire</u>

Cty., 307 F.3d 1, 8 (1st Cir. 2002), meaning it was either diagnosed by a physician as mandating treatment or is so obvious that a layperson would recognize the need for medical assistance, see Gaudreault v. Mun. of Salem, 923 F.2d 203, 208 (1st Cir. 1990). To prevail on the subjective prong, the plaintiff must show that the defendants acted with intent or wanton disregard when providing inadequate care. See Perry, 782 F.3d at 79.

The Court first turns to the subjective prong of the analysis. McCauley alleged in the amended complaint that the Medical Defendants engaged in a pattern of deliberate failure to treat his medical issues, which resulted in his conditions worsening over time. See, e.g., D. 36 ¶ 2. For the reasons set forth below, the Court finds that McCauley's allegations are not supported by the undisputed material facts, including his own deposition testimony.

### 1. Defendant Lubelczyk

McCauley argues that Lubelczyk, the only Medical Defendant who was directly responsible for McCauley's medical care and treatment, deliberately failed to attend to his medical issues, including by denying recommendations that McCauley undergo back surgery, delaying orders for tests and appointments and discontinuing McCauley's pain medication. D. 155 at 28-30. To the contrary, the undisputed material facts indicate that Lubelczyk conducted regular evaluations of McCauley's conditions, repeatedly referred McCauley for MRIs and other diagnostic tests, ensured that McCauley received consultations with specialists in connection with his back pain, facilitated the scheduling of McCauley's first back surgery, advised against McCauley's requests to delay the procedure and recommended medical restrictions, pain medication and ADL residency following McCauley's surgery. See, e.g., D. 134 ¶¶ 23-73. In a factually similar context, the First Circuit held there was no deliberate indifference where an incarcerated plaintiff was "examined by medical professionals many times;" "numerous diagnostic

tests were performed, including blood work, x-rays, and MRIs;" "outside specialists, including a . . . neurologist, neurosurgeon, and physical therapist were consulted;" and the plaintiff was given "other treatments for his symptoms, including pain medications . . . , steroid injections, and physical therapy." Feeney v. Corr. Med. Servs., Inc., 464 F.3d 158, 162 (1st Cir. 2006) (upholding district court's grant of summary judgment).

To the extent McCauley asserts that Lubelczyk exacerbated his back injury by allegedly ignoring a neurosurgeon's recommendation for surgery in 2011, this assertion is unsupported by the record. D. 160-6 at 27-28 (indicating that Dr. Riesenburger, McCauley's neurosurgeon in 2011, did not recommend surgery and, instead, referred McCauley to physical therapy). In addition, even assuming Lubelczyk's inability to secure an MRI within three months of McCauley's back surgery, see D. 134 ¶¶ 61-71, constitutes an "inadvertent failure to provide adequate medical care," such conduct does not give rise to a constitutional violation. Estelle v. Gamble, 429 U.S. 97, 105-6 (1976). Indeed, "[s]ubstandard or negligent medical treatment, 'even to the point of malpractice,' is insufficient to state a claim under the Eighth Amendment." Sepulveda v. UMass Corr. Health Care, 160 F. Supp. 3d 371, 385 (D. Mass. 2016) (citing Feeney, 464 F.3d at 162); see Torraco, 923 F.2d at 234 (explaining that a "state-of-mind issue such as the existence of deliberate indifference usually presents a jury question"). Moreover, to the extent McCauley disagreed with Lubelczyk's decision to discontinue his pain medication due to the detection of an illicit substance in McCauley's blood in October 2013, D. 134 ¶ 57, there is no requirement that "prison administrators . . . provide care that is ideal, or of the prisoner's choosing." Kosilek v. Spencer, 774 F.3d 63, 82 (1st Cir. 2014). In sum, the undisputed material facts do not suggest that Defendant Lubelczyk acted with intent or wanton disregard in attending to McCauley's medical needs.

## 2. *Other Medical Defendants*

With respect to the remaining Medical Defendants, the record is devoid of any evidence that they acted with deliberate indifference to McCauley's medical treatment. First, McCauley opines that Angeles failed to exercise proper care when prescribing a new drug, Zanaflex, to which McCauley had a negative reaction. D. 155 at 30. However, there is no indication that Angeles purposely prescribed medication that would harm McCauley and after the incident occurred MPCH personnel ensured that Zanaflex was added to McCauley's allergy list, D. 134 ¶ 118; D. 133-3 at 39. Without more, Angeles' conduct does not rise to the level of "deliberate indifference" required for an Eighth Amendment violation. See Sepulveda, 160 F. Supp. 3d at 385; see also Manarite v. City of Springfield, 957 F.2d 953, 956 (1st Cir. 1991) (explaining that deliberate indifference requires "more than ordinary negligence, and probably more than gross negligence").

Second, McCauley argues that Atkins was deliberately indifferent to his medical needs because she denied McCauley's grievance concerning Lubelczyk's decision to discontinue McCauley's prescription for Neurontin and failed to address the delay in McCauley's MRI allegedly caused by Lubelczyk. D. 155 at 31-32. McCauley does not recall any other instance in which Atkins was involved in or made specific decisions with respect to his care. D. 133-2 at 9-11 (explaining during his deposition that he did not recall "all the decisions [Atkins] made" and that he "recall[ed] dealing with her in the past" but could not "recall what it was for"). Courts have repeatedly held that it is reasonable for "prison administrators and staff . . . [to] rely 'on the opinions of the treating doctors,'" Costa v. Mass. P'ship for Corr. Healthcare, LLC, No. CV 17-12201-RGS, 2018 WL 3769823, at *2 (D. Mass. Aug. 8, 2018) (quoting Layne v. Vinzant, 657 F.2d 468, 471-72 (1981)), and the record is devoid of any evidence that Atkins intentionally

disregarded or was indifferent to McCauley's health. Accordingly, McCauley has not established that Atkins exhibited deliberate indifference to his needs.

Third, McCauley contends that Byron denied grievances concerning discomfort caused by McCauley's dentures. The record indicates that both grievances were denied in accordance with the medical team's recommendation and on the grounds that McCauley's dentures were already realigned for the best possible fit. D. 134 ¶¶ 121-22; D. 133-3. Where, as here, the "dispute concerns not the absence of help, but the choice of a certain course of treatment, or evidences mere disagreement with considered medical judgment," the Court finds that McCauley has not established an Eighth Amendment violation. Sires v. Berman, 834 F.2d 9, 13 (1st Cir. 1987). McCauley also argues that Byron denied "early pain medication" and ignored an order from McCauley's physician. D. 155 at 33. McCauley, however, has failed to provide any evidence to support these allegations. McCauley cannot rest on "conclusory allegations;" rather, he "must set forth evidence establishing the existence of an essential element to [his] claim." Torraco, 923 F.2d at 235. Accordingly, McCauley has failed to create a genuine issue of material fact based on his unsupported allegations regarding Byron's alleged misconduct. See Rivera-Colón v. Mills, 635 F.3d 9, 12 (1st Cir. 2011) (noting that "[u]nsupported allegations and speculation do not demonstrate either entitlement to summary judgment or the existence of a genuine issue of material fact sufficient to defeat summary judgment").

Finally, the facts before this Court do not suggest that Groblewski was involved in McCauley's medical care nor do they support a theory of supervisory liability with respect to Groblewski or MPCH. In the context of § 1983 claims, the First Circuit has explained that "only those individuals who participated in the conduct that deprived the plaintiff of his rights can be held liable." Veléz-Rivera v. Agosto-Alicea, 437 F.3d 145, 156 (1st Cir. 2006) (quoting Cepero-

Rivera v. Fagundo, 414 F.3d 124, 129 (1st Cir. 2005)) (internal quotation marks omitted).  As

such, supervisory liability "can be grounded on either the supervisor's direct participation in the

unconstitutional conduct, or through conduct that amounts to condonation or tacit authority."

Sepulveda, 160 F. Supp. 3d at 384 (quoting Whitfield v. Melendez-Rivera, 431 F.3d 1, 14 (1st Cir.

2005)) (internal quotation marks omitted).   The Medical Defendants emphasize the fact that

McCauley's amended complaint does not contain specific allegations regarding Groblewski, the

Regional Medical Director for MPCH, and that McCauley admitted during his deposition that he

did not know whether Groblewski was personally involved in his care, D. 133-2 at 7 (stating "I

don't know" in response to a question regarding whether "Groblewski made any decisions

regarding [his] medical care").  Where, as here, there are no allegations of direct participation:

> a supervisor may only be held liable where "(1) the behavior of [his] subordinates
> results in a constitutional violation and (2) the [supervisor's] action or inaction was
> '*affirmatively linke[ed]*' to the behavior in the sense that it could be characterized
> as 'supervisory encouragement, condonation or acquiescence' or 'gross negligence
> . . . amounting to deliberate indifference.'"

See Sepulveda, (quoting Whitfield, 431 F.3d at 14) (alterations and emphasis in original).  For the

reasons previously mentioned, the Court determines as a matter of law that Defendants Lubelczyk,

Angeles, Atkins and Byron's behavior has not resulted in violation of the Eighth Amendment and,

as result, supervisory liability cannot be imputed to Defendants Groblewski or MPCH.

Accordingly, the Court grants the Medical Defendants motion for summary judgment with respect

to McCauley's § 1983 claims.

C.    **The ADA and Rehabilitation Act Claims**

The Medical and Commonwealth Defendants urge this Court to deny McCauley's claims pursuant to Title II of the ADA[8] and the Rehabilitation Act as a matter of law.  "The ADA and the R[ehabilitation] A[ct] both proscribe discrimination in the provision of public services."  Partelow v. Massachusetts, 442 F.Supp.2d 41, 47 (D. Mass. 2006).  Section 504 of the Rehabilitation Act provides, in relevant part: "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a) (2006).  Similarly, Title II of the ADA states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132 (2006); see Theriault v. Flynn, 162 F.3d 46, 48 n.3 (1st Cir.1998) (noting that "Title II of the ADA was expressly modeled after Section 504 of the Rehabilitation Act, and is to be interpreted consistently with that provision"). Where, as here, a plaintiff raises essentially identical claims under the ADA and the Rehabilitation Act and those claims do not turn on any of the various differences between the two statutory schemes, courts are free to address the claims "simultaneously."  Partelow, 442 F. Supp. 2d at 47.

Under the ADA and the Rehabilitation Act, the undisputed material facts must show that the plaintiff: (1) "is a qualified individual with a disability;" (2) "was either excluded from participation in or denied the benefits of some public entity's services, programs or activities or was otherwise discriminated against;" and (3) "that such exclusion, denial of benefits, or

_____

[8] Although McCauley did not specify which provision of the ADA the Defendants violated, the Court previously construed the amended complaint as alleging a deprivation of medical care and failure to accommodate a disability, arising under Title II of the ADA, 42 U.S.C. § 12132.

discrimination was by reason of the plaintiff's disability." Parker v. Universidad de P.R., 225 F.3d 1, 5 (1st Cir. 2000). For inadequate medical care to give rise to a claim under the ADA or the Rehabilitation Act, however, "a plaintiff's showing of medical unreasonableness must be framed within some larger theory of disability discrimination." Lesley v. Chie, 250 F.3d 47, 55 (1st Cir. 2001).

After considering the record, the Court concludes that Defendants' conduct was not discriminatory on its face and that McCauley's treatment was not "so unreasonable—in the sense of being arbitrary and capricious—as to imply that it was pretext for some discriminatory motive, such as animus, fear, or apathetic attitudes." Lesley, 250 F.3d at 55 (internal quotation marks omitted). With respect to the Medical Defendants, the undisputed facts indicate, at worst, that there was delay in scheduling diagnostic tests, D. 134 ¶¶ 61-71, providers were unable to relieve McCauley's pain, D. 156 ¶ 21; D. 160-2 at 32, and that in certain instances providers failed to take precautions in providing McCauley's care, D. 134 ¶ 118; D. 135-1 at 53-54; D. 133-3 at 39. However, the record does not establish any discriminatory motive behind the Medical Defendants' treatment of McCauley's medical conditions, nor does it indicate that "treatment decisions rested on stereotypes about Mr. [McCauley's] conditions, as opposed to an individualized inquiry into his medical needs." Sepulveda, 160 F. Supp. 3d at 392. As to McCauley's allegations regarding the denial of his request for a stand-up locker, the record does not indicate that Defendants acted in an intentionally discriminatory or arbitrary and capricious manner in denying McCauley's request. In contrast, the undisputed material facts before the Court indicate that McCauley's request was denied because medical staff determined the accommodation at issue was not medically necessary. D. 129 ¶¶ 17-23; D. 129-1 at 34, 36. Without more, McCauley's claims

pursuant to the ADA and Rehabilitation Act are denied as a matter of law.[9] In factually similar circumstances "courts have held that bare allegations of inadequate or negligent medical care, unaccompanied by facts suggesting a discriminatory animus, do not state a claim" under the ADA and Rehabilitation Act. Sepulveda, 160 F. Supp. 3d at 392 (citing Boldiga v. Fed. Bureau of Prisons, No. CIV.A. 14-12135-MBB, 2015 WL 3505261, at *10 (D. Mass. June 3, 2015) (collecting cases)). The Court similarly concludes that the record in the instant dispute does not reflect discriminatory animus by any Defendant. Given that no genuine dispute remains as to any material fact, the Court dismisses the remaining claims against the Defendants as a matter of law.[10]

---

[9] Defendants raise other issues that are allegedly fatal to McCauley's claims, including Defendants' entitlement to qualified immunity, D. 127 at 8-13; D. 133 at 17-19, and the applicability of the ADA and Rehabilitation Act to MPCH. D. 133 at 19-25. The Court need not address these arguments given the ruling on the merits of Defendants' motions for summary judgment.

[10] As mentioned, the Court referred McCauley's medical malpractice claim to a medical malpractice tribunal in December 2017, D. 102, in accordance with state law. See Mass. Gen. L. c. 231, § 60B (requiring that "[e]very action for malpractice, error or mistake against a provider of health care shall be heard by a tribunal . . . [which] shall determine if the evidence presented if properly substantiated is sufficient to raise a legitimate question of liability appropriate for judicial inquiry"). The Court understands that the tribunal has not yet been conducted. D. 154 at 3. Here, where the Court has now dismissed McCauley's federal claims, it declines to exercise jurisdiction over the remaining state law claims. See Costa v. Mass. P'ship for Corr. Healthcare, LLC, No. CV 17-12201-RGS, 2018 WL 3748165, at *2-*3 (D. Mass. Aug. 7, 2018) (noting that plaintiff had not yet presented his malpractice claims to a medical tribunal, but further that since his "federal claims are precluded by the PLRA, this court is no longer a proper vessel for [plaintiff's] state-law claims"); Gibson v. Weber, 431 F.3d 339, 342 (8th Cir. 2005) (upholding dismissal of an incarcerated person's state law medical malpractice claim where the district court had dismissed federal claims pursuant to § 1983); see also United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726-27 (1966) (explaining that if the "federal claims are dismissed before trial . . . the state claims should be dismissed as well" and "if it appears that the state issues substantially predominate . . . the state claims may be dismissed . . . and left for resolution to state tribunals"). Accordingly, McCauley's medical malpractice claims are dismissed without prejudice.

## VI.     Conclusion

For the foregoing reasons, the Commonwealth and Medical Defendants' summary judgment motions are ALLOWED, D. 127; D. 132, and McCauley's cross-motion for summary judgment is DENIED, D. 155.  The Court also DENIES the parties' remaining motions as moot. D. 144-46; D. 153; D. 154; D. 157-59; D. 161-64.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge